**Affirmed and Memorandum Opinion filed December 31, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00709-CV

### OPTIMUM BONUS TEXAS, INC., Appellant

### V.

### OCWEN LOAN SERVICING, LLC AND HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2007-WM2, ASSET BACKED PASS-THROUGH CERTIFICATES, Appellees

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 13-DCV-209623B**

## M E M O R A N D U M   O P I N I O N

The buyer of real property at a foreclosure sale brought suit against the holder of the lien made the basis of the foreclosure sale and the lienholder's mortgage servicer. The buyer sought to rescind the foreclosure sale on the sole ground that this lien was invalid. On appeal from the trial court's traditional summary judgment dismissing the buyer's action against the lienholder and

mortgage servicer, the buyer argues that the trial court erred in granting summary judgment as to the buyer's claim seeking rescission of the foreclosure sale based on a different theory — unilateral mistake. The buyer did not plead any unilateral-mistake claim in the trial court nor did the parties try any such claim by consent. The buyer does not argue that the trial court erred in granting summary judgment as to the claim the buyer did assert in its live pleading. Because the buyer has not shown that the trial court erred in granting summary judgment, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, appellant/plaintiff Optimum Bonus Texas, Inc. purchased a one-acre tract of land in Fort Bend County, Texas ("Property") at a foreclosure sale.[1]  Appellee/defendant HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corporation Home Equity Loan Trust, Series 2007-WM2, Asset Backed Pass-Through Certificates (the "Bank") was the holder of the home-equity lien that was the basis of the foreclosure sale ("Lien"), and appellee/defendant Ocwen Loan Servicing, LLC was the mortgage servicer.

Less than two years after the foreclosure sale, Optimum filed suit against the Bank, Ocwen, and others seeking the equitable remedy of rescission of the foreclosure sale based on the alleged invalidity of the Lien.  According to Optimum's live pleading, at all times the Lien has been invalid based on non-compliance with various requirements in the Texas Constitution regarding home-equity liens.  Based on the alleged invalidity of the Lien, Optimum sought equitable rescission of the foreclosure sale.

The Bank and Ocwen filed a motion for traditional summary judgment

---

[1] Optimum states in its appellate brief that it purchased the Property at the foreclosure sale, and the undisputed summary-judgment evidence shows that Optimum bought the Property at the foreclosure sale.

seeking dismissal of Optimum's claims against them based on the statute of limitations and the alleged negation of essential elements of Optimum's claim by the summary-judgment evidence. The trial court granted the summary-judgment motion without specifying any grounds. Later, the trial court severed Optimum's claims against the Bank and Ocwen (collectively the "Bank Parties") into a separate case, making the summary judgment final and appealable.

## II.     ANALYSIS

Rescission is an equitable remedy that may be granted as to a foreclosure sale. *See Myrad Properties, Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751–53 (Tex. 2009). A court may grant this remedy based on one or more of various claims, including fraud, mutual mistake, or unilateral mistake. *See Myrad Properties, Inc.*, 746 S.W.3d at 751–53 (concluding that summary-judgment evidence proved as a matter of law that plaintiff was entitled to rescission of a foreclosure sale based on mutual mistake); *Heinrichs v. Evins Personnel Consultants, Inc. Number One*, 486 S.W.2d 935, 936–37 (Tex. 1972) (involving suit for equitable rescission based on fraud); *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 372–73 (Tex. 1960) (involving equitable rescission based on unilateral mistake); *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 219–21 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (en banc) (involving request for equitable rescission based on unilateral mistake).

In analyzing Optimum's appeal from the trial court's summary judgment, we examine the claims Optimum pleaded in the trial court in support of its request for rescission, whether any claims were tried by consent in the summary-judgment proceedings, and the appellate arguments that Optimum presents.

3

## A. What claims did Optimum assert in its live pleading?

We first examine what claims Optimum asserted in its live pleading in the trial court. Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 354–55 (Tex. 1995). A reviewing court should construe the petition liberally to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, a reviewing court cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer a claim from the text of the petition, then the court must conclude the petition does not contain the claim, even under a liberal construction. *See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55.

In the only petition that Optimum filed in the trial court, Optimum described the nature of its suit as follows:

> It is not legally possible for the home equity loan to have been secured by just part of the homestead. [Optimum] seeks a refund of what it paid at the foreclosure sale of the defective loan in return for relinquishing all rights it acquired to any of the [Property]. The Defendants' compliance with the foreclosure process cannot cure the problems of a loan and lien that were never in compliance with the law.

In its pleading, Optimum alleged that the home-equity loan was defective from its origination date because only part of the homestead was offered as security when the entire homestead had to serve as the security for a constitutionally valid loan and lien. According to Optimum "[a]bsent a valid home equity loan and lien there

4

could not have been a valid home equity foreclosure." Optimum alleged that its bid at the foreclosure sale was based on the presumption that it was buying a 3.3-acre tract that included the Property ("Larger Tract"). Notably, Optimum did not assert that it mistakenly believed that it was buying the Larger Tract. Rather, Optimum asserted various reasons why it claimed that the Lien was invalid or improper and then argued that "there can be no valid foreclosure of an invalid lien." Optimum's theory in its live pleading was invalidity of the Lien. Optimum bases its appeal on a different theory — unilateral mistake.

The term "unilateral mistake" does not appear in Optimum's petition. Nor does the pleading contain any mention of the elements necessary to show entitlement to rescission based on unilateral mistake. *See James T. Taylor & Son, Inc.*, 335 S.W.2d at 372–73. Also missing from the petition are the words "unconscionable," "material," or "ordinary care." *See id.* (stating these words as part of the essential elements to show entitlement to rescission based on unilateral mistake). The petition contains none of the trappings of unilateral mistake. Nor does the petition contain the term "mutual mistake." Though in the petition, Optimum uses the word "mistake" twice, each time it is in reference to a potential alleged mistake in the home-equity-loan transaction in 2006, in which Optimum was not involved. Optimum also uses the word "mistakes" once to refer to the defendants' alleged mistakes regarding the alleged defects in the home-equity loan. Optimum never refers to any alleged mistake by Optimum, regarding the foreclosure sale or otherwise. Even under a liberal construction of Optimum's live pleading, Optimum sought rescission of the foreclosure sale based only on the alleged invalidity of the Lien; one cannot reasonably infer from the language in the petition that Optimum sought rescission of the foreclosure sale based on unilateral mistake or mutual mistake. *See Moneyhon*, 278 S.W.3d at 878–79 (concluding

5

that, even under a liberal construction of the live pleading, plaintiff did not seek constructive trust based on a breach of fiduciary duty). Thus, the pleading does not support any rescission theory based on unilateral mistake or mutual mistake.

**B. Were any claims tried by consent in the summary-judgment proceedings?**

In their motion for a traditional summary judgment, the Bank Parties sought dismissal of Optimum's claims based on (1) the statute of limitations and (2) the alleged negation of essential elements of Optimum's claim. In their motion, the Bank Parties stated that Optimum sought rescission of the foreclosure sale solely based on the alleged invalidity of the Lien. Indeed, the Bank Parties asserted that the reason limitations barred Optimum's claims was that the statute of limitations for challenging the validity of the Lien expired before Optimum filed suit. In the alternative, the Bank Parties stated that the Lien-invalidity ground could be construed as an allegation of breach of contract or mutual mistake, and they argued that the summary-judgment evidence conclusively negated one or more essential elements of breach of contract and mutual mistake.[2] The Bank Parties also asserted that the summary-judgment evidence showed that the Lien and the foreclosure sale were legally valid.[3]

In its amended summary-judgment response, Optimum continued to rely upon the invalidity of the Lien. Optimum argued that summary judgment was not appropriate based on the summary-judgment grounds asserted by the Bank Parties. Optimum also stated that "[t]he [foreclosure] sale only took place because of either

---

[2] The Bank Parties did not state that the Lien-invalidity ground *reasonably* could be construed as an allegation of breach of contract or mutual mistake.

[3] The Bank Parties further sought summary judgment on the ground that Optimum had not tendered the Property back to the Bank in the same condition in which the Property was sold and on the ground that Optimum could not recover attorney's fees as a matter of law.

a mutual mistake or fraud." Though Optimum did not state that it had pleaded mutual mistake or fraud, it made statements suggesting that there were fact issues as to mutual mistake or fraud. Optimum did not mention unilateral mistake or any of the elements necessary to show entitlement to rescission based on unilateral mistake. *See James T. Taylor & Son, Inc.*, 335 S.W.2d at 372–73.

The record shows that the parties did not try by consent any claim of unilateral mistake as an alleged basis for the equitable remedy of rescission. *See Moneyhon*, 278 S.W.3d at 879. We presume, without deciding, that the parties tried by consent claims of fraud and mutual mistake as alleged bases for the equitable remedy of rescission.

**C. What arguments does Optimum present on appeal?**

On appeal, Optimum has briefed several arguments in support of the proposition that the trial court erred in granting summary judgment as to Optimum's purported claim against the Bank Parties based on unilateral mistake. Optimum asserts on appeal that, although it purchased the Property at the foreclosure sale, it mistakenly thought that it was purchasing the Larger Tract. In arguing that the statute of limitations for asserting defects in the Lien does not apply to its claims, Optimum states that, although Optimum did discuss in the trial court ways in which the Lien potentially violated the Texas Constitution, Optimum did so solely to show it was justified in thinking that the Lien covered the Larger Tract. On appeal Optimum asserts that it never has sought rescission based on alleged issues regarding the Lien; Optimum states that it "has not, and does not, contend that the home equity loan and Lien executed in 2006 provides the basis for its rescission claim."

In arguing that there is a genuine issue of material fact as to the essential elements of its claims against the Bank Parties, Optimum relies upon the following

part of the opinion in *James T. Taylor & Son, Inc. v. Arlington Independent School District*:

> Most of the cases and legal writers affirm the proposition that equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain.

335 S.W.2d 371, 372–73 (Tex. 1960). Optimum argues that the summary-judgment evidence does not conclusively negate any element of its claim for rescission based on mistake and presents argument that there is at least a fact issue as to each of the essential elements necessary to obtain rescission based on unilateral mistake under the *James T. Taylor & Son* case. *See id*. In sum, in the trial court Optimum did not plead or try by consent any claim of unilateral mistake, yet on appeal Optimum asserts that it sought rescission based on unilateral mistake.[4]

### D. Has Optimum shown that the trial court erred in granting summary judgment?

We presume for the sake of argument that Optimum sufficiently challenges on appeal the statute-of-limitations ground, despite Optimum's change of position as to the nature of its claims. As to the remaining summary-judgment grounds bearing on the merits of Optimum's claims, Optimum argues on appeal that the

---

[4] Even if Optimum had pleaded a claim of unilateral mistake in the trial court, we could not agree with Optimum's assertion on appeal that there is a fact issue as to whether Optimum exercised ordinary care.

trial court erred in granting summary judgment as to a claim that Optimum did not assert in the trial court and that the parties did not try by consent. Optimum does not present argument on appeal in support of the proposition that the trial court erred in granting summary judgment as to Optimum's alleged entitlement to rescission based on the alleged invalidity of the Lien — the only basis for rescission that Optimum asserted in its live pleading. Even presuming for the sake of argument that the parties tried by consent the claims of fraud and mutual mistake, as a basis for rescission, Optimum has not briefed any appellate argument that the trial court erred in granting summary judgment as to an alleged claim of fraud or mutual mistake. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that, even though courts interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the parties' argument). On this record, Optimum has not shown that the trial court erred in granting summary judgment. *See Pathak v. Harris County Hosp. Dist.*, No. 14-08-00020-CV, 2009 WL 972552, at *2 (Tex. App.—Houston [14th Dist.] Mar. 24, 2009, no pet.) (holding that appellant's appellate challenge to summary judgment as to claim appellant had not pleaded and that was not tried by consent did not show that trial court had erred in granting summary judgment) (mem. op.). Accordingly, we overrule Optimum's two appellate issues and affirm the trial court's judgment.

/s/ Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

9